Good morning, Your Honor. Good morning. May it please the court. This case is, this case basically stretches, I think, the well-established rule on leave to amend. We've got a situation here where we have a pleading in state court. It's a, it is state court in FIHA cases, starting back with the Baker case back in the 1980s. You don't need much of a pleading to start a FIHA case in state court. This was removed and after it was removed there's a motion to dismiss. Now the appellant contends that the dismissal in this case violates a number of very well dismissed a complaint, particularly dismissal with prejudice and the rules from the city of Redwood City, that it has to be beyond a reasonable doubt that the plaintiff cannot prove a set of facts that would state a cause of action. We submit that readily, this can readily can be done in this case. The respondents rely on principally on the fact that, well, no leave to amend was made, you know, by the plaintiff and they cite in the report of that Stewart v. U.S. Bank Corp. Well, we noted in Stewart v. U.S. Bank Corp., there's one very important distinguishing fact. Specifically, the court says at the very end of the case that once the district court re-characterized the plaintiff's claims as federal, then it became the plaintiff's burden to amend the complaint. Now what happened in this case was the plaintiff was filed, it was removed, motion to dismiss, there's a response, an opposition by the plaintiff in which he raises the very well-established rule in this circuit that FIHA claims, discrimination claims, where the issue was intent, you know, are not preempted by 301. He raised that in this case and then there's a response by the respondents. The court eliminates or rather decides not to have oral argument whatsoever and in one step re-characterizes the claim as preempted as a 301 claim and dismisses it with prejudice. Mr. Sullivan, can I back up with you a little bit? I just want to ask you a question about the nature of the claim. So was the loss of seniority or the denial of seniority was part of the age discrimination? Yes, but basically what the plaintiff is alleging, and so I concede it's not clear, it's not explicitly stated, but you've got a group that out of the skycaps, the outside skycaps, they're all older people, I mean one as old as age 80, and then there's a change in the practice, the policy, and the change in the policy moves this group of older employees inside where they lose work, lose... Was this because of COVID, because of the decrease in passengers coming to the airport? That's what was stated, yes, but at the same time as it was stated I think in one of the reply papers, everybody knew this group of older guys working as skycaps, they had basically the best jobs in the airport. They got the tips, they made a lot of money, and plaintiff alleges that there was resentment in the work group against them. So going back to the way you answered my question though, so if the plaintiff's contention is that the denial of seniority or the loss of seniority was part of the age discrimination, how do you get around the proposition that the claim significantly or substantially depends on an interpretation of the collective bargaining agreement? I rely around the line of cases that starts, this by the way, this one's not in our papers but cited in subsequent Ninth Circuit opinions. There's a Seventh Circuit case, METS versus Transit METS, which is 828 Fed 2nd 1202. It stands for the proposition that there's a policy or practice, including one that's in a CBA, and the policy or practice has a disparate impact of a protected group that can support a discrimination claim. Now the Ninth Circuit, like the Seventh Circuit, accepts the disparate impact theory in age discrimination. I'd note the Supreme Court has never ruled on it. It's been an open question in the Supreme Court since the early 1980s. But in any event, so we had this policy or practice, the union and the is on this group of the older skycaps, the majority of which are, I think, all are plaintiffs in this case. If not, there's certainly a large chunk of them, and we think that states a disparate impact theory. Also, we think that the plaintiff can prove that there was disintent. There was resentment against these older, highly compensated guys. They moved them indoors, and as a result, you know, yes, I mean, if we were claiming just denial of seniority, sure, that would be a 301. But we think the motivation, that there was motivation to deny them, you know, to, you know, cut these guys out of this very sweet job, which would be disparate treatment. But in addition, there's a disparate impact theory here. And the thing that, that really strikes us in this case, is the district court did a kind of a one, two, three, you're out the door without a chance to even orally argue that, you know, that there's a long-standing exception to 301 preemption. That's, that's a particular concern, because, you know, we get used to in 301 cases talking about preemption, but we lose sight of the fact that the underlying issue is jurisdictional. I mean, the court is sitting here and is not even letting the plaintiff have even heard, or having any opportunity to say that. I know there's no proposed amended complaint in the record, but if you had been given leave to amend, what would the amended complaint have said that would have saved it? The amended complaint would have said that this policy, or this practice that was adopted, had a disparate impact on this older group, number one. And secondly, also was motivated by resentment within the work represented in the bargaining group, who resented the fact that the skycaps made a lot of extra money in tips, and like I said, was a much older group, as evidenced by the fact that there was an 80 year old, God bless him, still doing the job. They all went indoors, and they all lost. Can I interrupt? How does that second point feed into an age discrimination? I understand that it may very well be true, but how does that feed into it being a legitimate age discrimination complaint? Well, you said the second point, the fact that there was resentment by the other members of the work group? Exactly, yeah. If the whole issue, all the cases that carved out this exception, the 301 preemption, all say that where the issue is motivation. If it's intent and motivation, that's quintessentially not, you know, it's a factual issue, I think they say in the Engel versus Norwich case, and if it is strictly a factual issue, that's not a CBA interpretation. No, I understand that. No, my question is, you said that there's resentment because they've got a sweet job, they're outside, they get more money for less work, and they resented. I get that, and how is that an age discrimination motivation? Well, because the group, that's where the long-term employee, the ones, the longtime serving employees are the ones that get this sweet job. Well, that gets us right back into the CBA. Well, yes, except if you, the logic of the Mets case, and then the Ninth Circuit Pattinger, the Pattinger case follows up on it, is that there's a strong correlation between the age and the seniority, and you know, there are some cases in the Ninth Circuit, when there's that correlation and that makes a difference in the case, that is a viable age discrimination case. Now, certainly I'd point out also, if the case, you know, this isn't a case of win or lose, if the plaintiffs attempted to go into a CBA interpretation argument, now the state court absolutely has the jurisdiction to hear and dismiss that. That's very clear in this circuit from the Etheridge case, again, not in the papers, but the Etheridge case dealt with preemption and pointed out that, you know, the issue of preemption can firstly and foremostly be decided by a state court, and they routinely and regularly do it. So we think that the plaintiffs should have had their opportunity in state court to present their FIHOT theory, and the correspondents would have been not prejudiced because any attempt to get the state court to interpret the CBA, they could have gotten the state court judge to dismiss it. I think I just ran out of my time here. Yes, thank you, counsel. I guess, counsel, for the other side, the first one, Mr. Tannert, has five minutes, and the second one has five minutes. Unmute yourself, please. Thank you, Your Honor. Good morning, Your Honor. As may have pleased the court, Paul Tannert for Appellee's Avian Indices Group, and I want to also thank the court for allowing me and my colleague with the union, Mr. Casillas, to split time this morning. As an initial matter, I want to make clear that the allegations in plaintiff's opposition to ABM's motion to dismiss and the allegations that arose in plaintiff's opposition to the union's motion for judgment on pleadings, in fact, and also plaintiff's arguments in the opening brief to this court, not once did the plaintiff go outside of the very specific allegation that the only violation that they alleged to have suffered was specifically because they could not transfer their seniority rights when they transferred positions from outside the terminal to inside the terminal. I appreciate that we are looking outside of that to see if there were additional allegations that could be made that may give plaintiffs an opportunity here to give rise to a claim under FEHA, but when the claims are rooted specifically in the transfer of seniority rights, there is no way that one can look outside of the CBA for determination of these facts. The case in Burnside addresses this specifically, and it establishes this two-step process to determine if a state law claim is preempted by the Labor Management Relations Act. First, the court involves a right that exists solely as a result of the CBA. If it does, the claim is preempted, and the analysis ends right there. You'll hear, as previously articulated, this is the entirety of plaintiff's allegation, and we need not look any further than plaintiff's complaint to establish this truth. Paragraph 12 of plaintiff's complaint, which is included in the excerpts of the records at 117, represents the totality of these allegations of plaintiffs, and it states, plaintiffs were not permitted to utilize their airport and terminal seniority in violation of a collective bargaining agreement between ABM and the union. Full stop. That is the sole allegation that is contained in the complaint, and this contention is not tied to plaintiff's ages specifically. Seniority doesn't necessarily tie itself directly to a plaintiff's age. It's only, the only argument is the plaintiff's right to maintain this seniority through a job transfer, and this rule of not transferring seniority through a position change, it's not applied disparately to workers over 40. That's not what plaintiff alleges. Even given the opportunity to assert allegations here at this stage, that's not what plaintiffs are alleging. This was applied evenly for all employees for which a transfer was necessitated, and as the court pointed out, this was necessitated because of COVID. This was a time where there were tens of thousands of Californians who were losing their jobs, who were having their hours reduced, their pay reduced, who were being forlorn. Businesses were shutting down, and frankly, I think that's maybe somewhat commendable on ABM's part to make sure that these workers who were outside the terminal, they weren't simply let go, but were integrated to positions, new positions, inside the terminal so that they may maintain their employment. Now, can I ask you a question that I'm sure is outside the record and maybe not entirely relevant to the disposition of the suit, but it does occur to me to ask. Air travel has rebounded. We're back to the levels where it was before. What's happened to these people? Are they back outside again? That is a terrific question, Your Honor, and at this juncture I actually don't know if they have been returned to their SCICAP position. Perhaps they have. I do know that it is the practice of the company to make sure that individuals are returned to their position to the extent that is feasible. I've handled a number of cases where that has been the case, but that would just be an assumption for me in this particular case. If they're not brought back outside with the rebound in traffic, maybe you've got another lawsuit coming at you. Well, I like to believe that my client has returned there, and I hope that that is not the case. Right. Thank you, Mr. Tidehart. Mr. Casillas? Yes, thank you. Good morning. May it please the Court, my name is Maximilian Casillas, and I represent Apelli United Service Workers West, SEIU Local 1877, the union. And the union would like to incorporate ABM's oral argument to the extent that it applies to the union. ABM's counsel has sufficiently argued that seniority rights arise and depend solely on the CBA and are thus preempted by the LMRA. The union will just further note that the seniority provisions in the complaint, they are defined as and referred to specifically with reference to the CBA, the operative CBA, and it says as required by the CBA. Thus, the only right asserted by the appellant has to depend on the interpretation of the CBA according to appellant's own complaint. Nonetheless, one main reason this court can affirm the district court's ruling as to the union, as the court held below, the district court correctly held that plaintiff's claims are completely preempted by the LMRA because plaintiff's complaint is cognizable, if at all, as a claim for the breach of the duty of fair representation, which applies specifically to the union. And the district court also found preemption and preclusion by the six-month statute of compliance to this duty. This case is simply a dispute between the employer, ABM, and appellant, in which the union has no dog in the fight because all the conduct alleged is either a duty of fair representation, in which the statute of limitation has long since passed, since the complaint was filed, or enforcement of seniority rights cloaked as age discrimination, emanated solely from just the face of appellant's complaint. And as your honors noted, this situation presented in the complaint demonstrated difficult times, where the COVID pandemic led to mass layoffs and disruption. In the face of this, the union still had an obligation to treat all its members equal and fair. The plaintiffs in the complaint are only a small minority of the members who claimed they were wrong based on their seniority. They had the obligation to raise this issue six months after it occurred, whether or not it had merit. Nothing excuses the six-month window. There's basically one main reason, one main point I'd like to point out, and it's been alluded to. The allegation in the complaint that implicates the union, and nothing more. This is the only allegation the complaint alleges. Plaintiffs complained to Nouvelle, to both ABM and the union, to enforce the collective bargaining agreement, but received no redress. The Ninth Circuit and Hardeen, from the district court ruling, dismissing a case with even stronger complaint language than here. There, the plaintiff's sole claim was that the union failed to provide the plaintiff with quality representation in her claims and denied her representation based upon her race and disability. The Ninth Circuit concluded on its face, this is a clear claim for union's breach of the statutory duty of fair representation. Here, the appellant's claim does not even offer any nexus of discrimination to the alleged failure to enforce the CBA like the plaintiff did in the Hardeen case. Allegations as they relate to the union are even more purely a duty of fair representation. The only allegation in the complaint relates to enforcement, which can only depend on the CBA and its provisions and its meaning. Plaintiffs do not present additional facts to the district court by way of, you know, seeking leave to amend because there are no other facts that could have been alleged to implicate the union. Thus, the district court did not abuse its discretion in dismissing plaintiff's complaint with prejudice and without leave to amend because there was nothing more to be done. Plaintiffs consciously chose not to request leave to amend if the court found preemption. The court found that plaintiffs did not request leave to amend if the court finds preemption. That's in the court's order below because the six-month statute of limitations applies to duty of fair representation cases and LMRA, and that's at the record page 11. Any amendments would have been futile because all roads lead back to the CBA and the duty of fair representation. And it's for these reasons, the district court should affirm the court should affirm the district court's ruling in its entirety as it applies to the union. Thank you. I see my time is up. Thank you, counsel. Mr. Sullivan, I'll give you a minute for rebuttal. I thank you, your honor. Both counsel for the employer and for the union are arguing, essentially arguing the merits of the 301, etc. And that's really not the point of this appeal. The point of this appeal is that the district court never gave any opportunity to amend. In fact, it recharacterized. Had there been a recharacterization and any opportunity to amend, then the plaintiff would have readily been able to amend under a METS type of theory. Counsel, how would you amend the complaint if you had the opportunity to do so? I would plead that the policy of bringing everybody indoors had a disparate impact on this group, number one. And secondly, that the policy was motivated by members of the union and people in management that wanted to get guys were much more highly compensated than the others. And I would note under that the Schreiber case that are under the Schreiber case that counsel both counseled argued that we never made any attempt to amend. The district court's order never once makes a finding than whether or not we could amend. You know, could we possibly state a set of facts? We think that's critical. We think under a nice precedent, if I if I can ask you on a point that of your would be amended complaint, you say that these are older guys who are much more highly compensated. What's the compensation that they're getting from the employer? That is to say, is the employer saving money by doing this? Or is the greater compensation coming from tips? I think it's both. I, to be very honest, I'm not sure what the difference on the I know that I think there's higher pay, but there's also the tips. And it's also better work conditions. I mean, what I'm trying to figure out is you say you sometimes get a successful way age discrimination claim when you've got somebody who's got a lot of seniority, who's older, and the company fires that person because you hire somebody new at a lower pay scale, you save, you know, $20,000 a year. So I'm trying to figure out any possible motivation on the part of the company for moving them inside and helping compensated in the later, which is why I'm asking whether the higher compensation is coming from the tips and you say you don't know. I, I believe they get paid less. Also, they're working. We do know they were working far fewer hours. So basically, it's kind of a subtle rip, if you will, that you are eliminating, reducing the work hours of these older people that, you know, arguably, we would allege, were perceived as being less productive. Because what Ron is talking about is classically, that is the Mets case. You know, moving people are coming up with a policy that saves salary. And we think that is very much what happened in this case. And as such, falls within, it's kind of a hybrid, really, it's a mix of disparate impact and disparate treatment, and has been criticized as such. But in the Pottinger case, there's a dissent that mentions that. But it's accepted law in the Ninth Circuit that is a viable theory. But the thing the district court should have done, we allege the district court, before just dismissing it with prejudice, should have at least given the opportunity to amend. And we point out that we're not too late on this, because it's very clear in this circuit. And I think elsewise, it's the Criterion Systems case, that even on appeal, in a case of this nature, because it is essentially a jurisdiction case, this court can decide that issue. And, you know, we think it was an improper dismissal, we should have had the opportunity to proceed to amend. And if we're amended, as we said, at the very end of the papers filed in district court, we would have sought to remand on the theory that we would have re-amended to. All right. Thank you, Counsel. Davis v. ABM Industries will be submitted.
judges: WARDLAW, FLETCHER, Kennelly